## SCARBOROUGH et al. v. BRADLEY et ux.
### No. 3996.

Court of Civil Appeals of Texas. Texarkana.
April 3, 1931.

Rehearing Denied April 9, 1931.

Bishop & Holland and Justice & Sigler, all of Athens, for appellants.

Gentry & Gray, of Tyler, Wynne & Wynne, of Wills Point, and W. R. Thomas, of Athens, for appellees.

SELLERS, J.

G. W. Bradley and wife, Henrietta, brought this suit against G. C. Hassell, G. C. Scarborough, W. W. Scarborough, Walter Welborn Scarborough, S. Marvin Cely, and Roy Cely, alleging a conspiracy on the part of the defendants, except G. C. Scarborough and Walter Welborn Scarborough, to defraud them out of their property both real and personal. G. C. Scarborough and Walter Welborn Scarborough are sons of W. W. Scarborough, in whose names W. W. Scarborough placed the title to certain real estate involved in this suit. All of the defendants answered by general demurrer and special exceptions, general denial, and all disclaimed any interest in the real estate, except G. C. Scarbor-

ough, who alleged that he was the owner of the real estate involved. The case was tried to a jury upon special issues, and, upon the issues as found by the jury, the court entered judgment for plaintiffs for the relief sought in their petition, to which judgment defendants excepted and gave notice of appeal, and the cause is now before this court for review.

The record discloses that Bradley and wife are old negroes living near Frankston, in Henderson county, and in 1926 they owned 480 acres of land upon which they resided, and had also accumulated several thousand dollars in money, and owned one promissory note of $5,000, known as the Mandelstam note. They were also owners of $4,000 stock in an unincorporated negro bank in the city of Palestine. Some time in 1926 this bank became insolvent, and notice of the condition of the bank was given Bradley and wife by the officers of the bank.

G. G. Hassell was in business at Frankston at the time of the failure of the colored bank, doing a large credit business. W. W. Scarborough was employed by Hassell, and as a part of his duties inspected the crops from time to time upon which Hassell had mortgages. Bradley and wife were customers of Hassell, and had traded with him for several years.

It appears from the pleadings and evidence of Bradley and wife that, immediately after they had received notice of the insolvency of the negro bank, G. G. Hassell and W. W. Scarborough, who also had learned of the bank's failure, came to Bradley and wife and represented to them that they were going to lose everything they owned or possessed, but, if they would turn over to them all their property, both real and personal, that they could make a much better settlement with the creditors of the bank than Bradley and wife could, and, when they had made the settlement, they would return to Bradley and wife the property remaining.

Bradley and wife, relying upon the honesty and integrity of Hassell and W. W. Scarborough, and desiring to have the best settlement possible made with the creditors of the bank, and in that purpose, turned over to Hassell and Scarborough 480 acres of land and the $5,000 Mandelstam note, which note was of the value of $5,000. They executed a warranty deed to the land, and assigned the note to Hassell. No consideration whatever, though, was paid by Hassell or Scarborough to Bradley and wife for this property.

It further appears that neither Hassell nor Scarborough, after getting the property in their possession, made any attempt whatever to secure a settlement with the creditors of the bank for Bradley and wife or on their account, but, on the contrary, they appropriated

the property to their own use and benefit in the following ways, as shown by the petition of plaintiffs, the material allegations of the petition being supported by the evidence:

"Complaining further, plaintiffs would show to the Court that G. G. Hassell did not pay them anything for the execution of this deed; that the $6,000.00 cash consideration contained therein was fictitious and that no amount whatsoever was paid to these plaintiffs at the time the same was executed; but that in furtherance of said common design and conspiracy to defraud these plaintiffs of their life earnings, the defendant G. G. Hassell, did on the 15th day of January, 1927, represent to the plaintiffs that in order for the transaction to be bona fide on its face and the fact that the plaintiffs were to remain in possession of said land and premises for the year 1927, it would be better for them to execute to him a rental contract; and the plaintiffs, still relying on the honesty and integrity of said defendant, believing the representations they made to be true, which representations they now know were not true and were fraudulent and malicious, did on the 15th day of January, 1927, make and execute this rental contract, in which they contracted and agreed to deliver to the defendant, G. G. Hassell ¼ of the cotton and ⅓ of the grain raised on said land and premises as rent; that in furtherance of said common design and conspiracy, the defendant G. G. Hassell, did, without consideration and for the sole purpose of fraudulently taking from these plaintiffs that to which they were entitled, assign said rental contract to the defendants, J. M. Cely and J. R. Cely; and that J. M. Cely and J. R. Cely were acquainted with the facts at the time they accepted the same, and that they did not pay anything therefor; but with full knowledge of the facts and circumstances surrounding the execution of the entire transaction, did willfully and maliciously join and enter into said conspiracy for the purpose of fraudulently taking from these plaintiffs their entire property.

"Complaining further, plaintiffs would show to the Court that in the early part of April, 1927, the above described land and premises became valuable as mineral property and that certain parties presented themselves to the plaintiffs for the purpose of leasing from them the 480 acres of land hereinabove described; but that acting upon the advice of the defendant, G. G. Hassell, plaintiffs informed these parties that they could not lease the land; that the title was in the defendant, G. G. Hassell, but requested that they see Mr. Hassell in regard thereto; and that on April 15th, 1927, defendant, G. G. Hassell, did make and execute to John W. Easterwood an oil and gas lease, covering this entire 480 acres of land, which lease is recorded in Volume 127, page 518, of the Deed Records of Henderson County, Texas; and

that as a consideration for said lease, the said John W. Easterwood did pay to G. G. Hassell the sum of $4,810.00 in cash; and that at the time the abstract covering the property was examined and it was found that these plaintiffs were still in possession thereof, the purchaser of the lease refused to accept the same without these plaintiffs did sign an affidavit showing that the sale to G. G. Hassell was bona fide; and that G. G. Hassell had an affidavit prepared for the execution of these plaintiffs; and represented to them at the time that this was the only way the land could be leased, and as they were to get the money, it would make no difference for them to execute the affidavit; and that it was merely a formal matter and that all of them, being the plaintiffs and defendants herein, knew that no title had passed, and it was merely made to enable the title to be passed by the lessee; and that, relying upon the representations made by the said G. G. Hassell, these plaintiffs did execute said affidavit before J. C. Dixon, a Notary Public of Anderson County, Texas, and that thereafter, the money was paid to the defendant, G. G. Hassell; that a short time thereafter, in May, 1927, these plaintiffs, more especially G. W. Bradley, requested of G. G. Hassell that he pay to this plaintiff the lease money, and that the defendant Hassell paid to this plaintiff the sum of $2,000.00, which he stated to him. was all the money that he had received from the lease and was the money he had gotten therefor, the payment being made in cash money of thirty-six fifty-dollar bills and ten twenty-dollar bills; but the said representations made by the defendant, G. G. Hassell, were untrue, were made in the furtherance of the common conspiracy to mulct from these plaintiffs all of their property, in order that the same could be divided and split among the defendants herein in such proportions as they might determine were equitable among themselves, leaving out and overlooking the interest of these plaintiffs, in that they were entitled to all of the money rather than what little amounts the defendants and each of them wanted to give; and that, by this transaction, these defendants fraudulently and maliciously took plaintiffs' money in the sum of $2,810.-00, which they had no right to, which they had no title to, and which they had no interest in, but took it and kept it, by violating the confidence of these plaintiffs.

"Complaining further, plaintiffs would show to the Court that in June of 1927, the defendant, W. W. Scarborough, and the defendant, Marvin Cely, represented to the plaintiffs, G. W. Bradley and wife that they wanted the note of A. B. Mandelstam and that it was in the hands of G. G. Hassell, and plaintiffs were not going to get anything out of it at all; and that if plaintiffs would sell it to them, they would get the note from the defendant, G. G. Hassell; and offered at the

time to deliver to the plaintiff the sum of $3,000.00 for this note; plaintiff told said defendants that he was not going to take that much money for the note; that Mr. Mandelstam had requested him that anytime he wanted his money to let him know; and that the note was worth the full face value of $5,000.00 and interest accumulated thereon in cash money; but that said defendants, and each of them, represented to the plaintiff that he had to take the money and that 'By God, they were going to have the note,' and forced into his hands the sum of $3,000.00, which occurrence took place in the warehouse of G. G. Hassell, immediately behind his store building; that they then went into the store building of G. G. Hassell and demanded the Mandelstam note, which was immediately turned over to them by the defendant, G. G. Hassell; that this plaintiff then laid the money upon the counter and again affirmed his decision and that he did not want that money for the note, but was again informed that he had to take it, which information was given to him by the defendant, J. M. Cely or Marvin Cely, and by the defendants W. W. Scarborough and G. G. Hassell; and that G. G. Hassell then picked up the money and counted out for himself the sum of $1,123.23, which he claimed that these plaintiffs owed him, but which in truth and in fact they only owed to him the sum of $98.60; and then handed back to the plaintiff the balance of $1,876.77, which amount they forced him to take; that immediately thereafter, A. B. Mandelstam learned of the fact of his note being in the hands of these defendants, together with the fact of how it was obtained, and immediately paid to them within three or four days thereafter the full amount of principal and interest due on said note; and that by said conspiracy and by fraud, the defendants took from these plaintiffs the sum of $3,623.23 by this transaction, which amount they still withhold from them.

"Complaining further, plaintiffs would show to the Court that thereafter, on the 23rd day of June, 1927, these defendants came to the plaintiffs and represented to them that the defendant, G. G. Hassell, had held the land as long as he desired and was ready to deed it back to them; but that if he deeded it back to them in its entirety, being 482 acres, that he could still lose the 280 acres over and above his homestead and suggested that he deed to the plaintiff 200 acres of land and deed to G. C. Scarborough, who was the son of W. W. Scarborough, the remaining 282 acres; that these plaintiffs, still relying on the honesty and integrity of said defendants and each of them, without knowing how they had been robbed in the past, agreed to this transfer; and that on the 23rd day of June, 1927, G. G. Hassell made and executed to these plaintiffs his Warranty Deed, covering 200 acres of the land, and executed to G. C.

Scarborough his Warranty Deed conveying the remaining part thereof or 280.92 acres; that this deed shows a consideration of $3,000.00 cash in hand paid; but that in truth and in fact, no moneys were paid at all and never had been paid, all of which fact was known to the defendants, and each of them.

"Complaining further, plaintiffs would show to the Court that after a part of these transactions took place, and after these plaintiffs found out that the defendant G. G. Hassell had obtained the sum of $4,810.00 for the lease and had turned over to them only the sum of $2,000.00, the defendant, W. W. Scarborough, represented to these plaintiffs that they were going to lose everything they had and that there was but one way they could save themselves, and that was by having him as their friend, by whom to prove facts that has transpired, and he told the plaintiff the amount that Hassell had received for the lease and, in order to place himself in their good graces and to retain the confidence that they had in him, suggested to the plaintiffs that they employ an attorney of his selection to obtain this money from Hassell; and represented to them that he would stand by them throughout the entire transaction; and that at this time, and a short time thereafter, he procured from these plaintiffs $4,500.00 in cash money; but immediately after he had obtained the money, which he obtained under false pretenses, and which be obtained fraudulently, he refused to pay it back to the plaintiffs, but instead, built himself a fine house in the town of Frankston, using these plaintiffs' hard-earned money to build for himself and family a beautiful home, when he had no intention of returning the money to them at all; and that thereafter, admitted to the plaintiffs, and more especially to the plaintiff, George Bradley, that he owed to him the sum of $7,900.00, which was the $4,500.00 that he had obtained from him under false pretenses and the balance represented his part of the proceeds of the division of the spoils obtained in the unlawful conspiracy; and represented to him that he desired to pay this money but that the only way he could pay it was in land, and that he was the owner of a tract of land of 162⅓ acres of land in Kaufman County, Texas; and that this land was reasonably worth the sum of $125.00 per acre, or a total of $20,000.00, and represented to the plaintiffs that their land was worth only the sum of $5,000.00, this being the 200 acres to which the plaintiffs had title, the other part being in the name of G. C. Scarborough, the son of the defendant, W. W. Scarborough; and that, still relying upon the honesty and integrity of said defendant, still believing that he would and could tell the truth, and seeking to recoup the loss of $7,900.00, which the defendant W. W. Scarborough owed to them, without knowing the value of the Kaufman County Land, but relying solely upon the rep-

resentations of said defendant, these plaintiffs agreed to the trade, and a deed was executed by Walter Welborn Scarborough, in whose name the land was at that time, as the defendant, W. W. Scarborough, owed everybody under the sun who would let him owe them, a large part of whom had placed their accounts in judgments, and from these accounts and judgments he was hiding and secreting his property; and for that reason, was carrying his lands in the name of his sons and making them parties to the illegal contract; and believing that said land was worth the amount of money of $125.00 per acre, as represented by the defendant, W. W. Scarborough, this trade was made, and these plaintiffs deeded to G. C. Scarborough, the remaining 200 acres of land, and agreed to cancel the indebtedness that W. W. Scarborough, the father of G. C. Scarborough owed to them; and in return therefor, received a deed to the 162⅓ acres of land in Kaufman County, Texas, out of the Charles Askins Survey, and described as follows, to wit: [Here follows description.]

"Complaining further, plaintiffs would show to the Court that this land was of no value at all, that it had a loan against it to the First Joint Stock Land Bank of $5,500.00, which was more than the land itself was worth; and that all of these facts were known to the defendant, W. W. Scarborough and to the defendant, Walter Welborn Scarborough, but that falsely and fraudulently for the purpose of taking from these plaintiffs their land, without consideration, and without paying them therefor, represented the facts as hereinabove set forth; and by this means and in furtherance of the common conspiracy and design, the defendants herein obtained a Deed to these plaintiffs' property in Henderson County, Texas, as hereinabove described; and that the consideration recited in said Deed to the defendant, G. C. Scarborough, is untrue, is fictitious, and false and fraudulent.

"Complaining further, plaintiffs would show to the Court that all of the Deeds hereinabove set forth from these plaintiffs to the defendants, or any of them, were false, were untrue, were obtained by fraudulent means and representations, were made in fraud and in furtherance of the common conspiracy and design on the part of the defendants and each of them to rob these plaintiffs out of their land and premises and out of their property, which they had acquired by a life time of hard work; and in truth and in fact, passed no title whatsoever; but these plaintiffs are now and have always been during all of this time the fee simple owners of said land and premises and entitled to the possession thereof; and the plaintiffs wherefore now tender to the defendant, W. W. Scarborough, a Deed to the land and premises in Kaufman County, Texas, as hereinabove described.

"Wherefore, premises considered, plaintiffs pray that the defendants and each of them be cited to appear and answer this petition and that, upon a hearing hereof, that they have judgment divesting out of the defendants, and each of them, and investing in these plaintiffs all of the right, title, and interest of said defendants, if any they ever had, which these plaintiffs expressly deny, and investing the same in and to these plaintiffs and that they have judgment against said defendants, and each of them, both jointly and severally, for the full sum of $2810.00 for the lease money and $3623.23 for the Mandelstam note money; and as against the defendant W. W. Scarborough that they have judgment for the full sum of $4500.00, being the money obtained by him from these plaintiffs, with interest on each of said items from the date of the filing of this suit, until paid, at the rate of 6% per annum; for all costs of suit, together with such other and further relief, both general and special, in law and in equity, to which they may show themselves entitled."

Upon the trial it was developed that there were several hundred dollars in the First State Bank of Frankston deposited in the bank to the account of G. G. Hassell, special, by the owners of the lease which Hassell had executed on the lands of Bradley; said money representing the rentals called for in the lease.

The issues as submitted to the jury by the court and the answers thereto are as follows:

"Question No. 1: Do you find from a preponderance of the evidence that the defendants, Hassell and Scarborough, upon learning of the failure of the negro bank at Palestine, Texas, agreed together to induce the plaintiffs to transfer the title to their land to Hassell and Scarborough or either of them, with the intent to defraud Plaintiffs out of said land?" Answer of the jury: "Yes."

"Question No. 2: Do you find from a preponderance of the evidence that the Defendants Hassell and Scarborough, upon learning of the failure of the negro bank at Palestine, Texas, induced the Plaintiffs to transfer the title of their land to said Hassell and W. W. Scarborough, or either of them?" Answer of the jury: "Yes."

"Question No. 3: Do you find from a preponderance of the evidence that the purpose of Hassell and W. W. Scarborough in inducing the Plaintiffs to transfer the title to their land to Hassell or W. W. Scarborough, or either of them, was to defraud the Plaintiffs out of their said land, or any portion thereof?" Answer of the jury: "Yes."

"Question No. 4: Did the Plaintiffs, G. W. Bradley and wife, lease the 481 acres of land to the Defendant, G. G. Hassell, for an agreed consideration of $2000.00 in cash?" Answer of the jury: "No."

"Question No. 5: Do you find, from a preponderance of the evidence, that the Defendant, G. G. Hassell, in executing the lease to John W. Easterwood, dated April 15th, 1927, was acting for Plaintiffs, G. W. Bradley and wife?" Answer of the jury: "No."

"Question No. 6: Did the Plaintiff G. W. Bradley sell the Mandelstam note to J. M. Cely for an agreed consideration of $3,000.00 cash?" Answer of the jury: "No."

"Question No. 7: What was the value of the Mandelstam note on the day it was obtained by Cely?" Answer of the jury: $5,000.00 and interest.

"If you have answered question No. 1 'No,' then you need not answer the following question; but if you have answered question No. 1 'Yes,' that is that the defendants, Hassell and W. W. Scarborough did enter into an agreement to induce the Plaintiffs to transfer the title to their land to Hassell and W. W. Scarborough, or either of them, with the intent to defraud Plaintiffs out of said land, then you will answer the following question:

"Question No. 8: Do you find from a preponderance of the evidence that the contract of date September 5th, 1927, in which the 481 acres of land in Henderson County, Texas, was deeded to G. C. Scarborough was made in furtherance of this agreement?" Answer of the jury: "Yes."

■ By a great number of assignments the appellants complain that the petition of appellees on its face shows that the property was turned over to appellants for the purpose of defrauding the creditors of appellees, and therefore, the parties being in pari delicto, the court could not grant any relief to the parties, but should leave all of them where they are found. We do not agree that the petition is susceptible of the construction placed upon it by appellants. It is our opinion that the petition alleges a case in which Hassell and W. W. Scarborough were made the agents of appellees for the very legitimate purpose of effecting a fair and reasonable settlement agreeable with the creditors of the insolvent bank, and that the property was placed in the hands of G. G. Hassell as their trustee to be used only for the purpose of satisfactorily settling with such creditors their liabilities to them as stockholders of the bank.

Appellants assigned as error the refusal of the court to give certain special charges which were requested by them. We have carefully considered each of the charges refused by the court, and are convinced that the issues as presented by the charges refused were unnecessary to go to the jury when considered in connection with the charge of the court.

■ It is insisted by appellants that the court erred in giving appellees judgment for the amount of money in the First State Bank of Frankston in the account of G. G. Hassell, special. The evidence discloses that all the money in this account represented rentals from the lease which Hassell executed on the lands of appellees, and Hassell testified that he did not claim any of the money in that account. Therefore we think the court was authorized in entering the judgment for appellees against all of the appellants for the amount of money in that account.

We think the evidence is entirely sufficient to support the judgment. Without reciting the details, the record before this court goes to show that the appellees have in nowise received any consideration for their property passed to appellants entirely in agency for a specified purpose.

All of appellants' assignments not here discussed have been considered, and, being of the opinion that none of them present error, they are overruled.

The judgment of the trial court is affirmed.